UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**SANDRA ANN ALEXANDER**  \*  **DOCKET NO.  07-477**

**VERSUS**

**MICHAEL J. ASTRUE,**  \*  **MAGISTRATE JUDGE HAYES**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION**

## MEMORANDUM RULING and JUDGMENT

Before the court is claimant's petition for review of the Commissioner's denial of social security disability benefits.  Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment.  For reasons assigned below, the decision of the Commissioner will be **REVERSED** and **REMANDED** for further proceedings.

### I.  Procedural History

On October 27, 2004, Sandra Ann Alexander filed an application for a period of disability and disability insurance benefits under the Social Security Act.  (Tr. 13).  She alleged disability since October 13, 2003, (Tr. 59), due to manic depression and heart valve disease.  (Tr. 62).  The claim was denied at the initial stage of the administrative process.  (Tr. 34).  Thereafter, Alexander requested and received a May 2, 2006, hearing before Administrative Law Judge ("ALJ") W. Thomas Bundy.  (Tr. 24, 38).  In his October 11, 2006, written decision, the ALJ determined that Alexander was not disabled under the Act, finding at Step Four of the sequential evaluation process that she was able to return to her past relevant work as a cashier and waitress. (Tr. 22).  Alexander appealed the adverse decision to the Appeals Council.  (Tr. 7-9).  The

Appeals Council denied Alexander's request for review on January 19, 2007. (Tr. 4-6). The ALJ's decision thus became the final decision of the Commissioner. *Id.*

On March 9, 2007, Alexander sought review before this court. (Doc. #1). She alleges that the record does not contain substantial evidence supporting (a) the ALJ's determination that she did not meet a listing at Step Three of the sequential evaluation process; and (b) the ALJ's hypotheticals posed to the vocational expert ("VE").

## II.   Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* §§ 404.1520, 416.920. The steps are as follows,

(1)   An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)   An individual who does not have a "severe impairment" of the requisite

>    duration will not be found to be disabled.
>
> (3)   An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4)   If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -05 (5th Cir. 2001); § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner has the burden to show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III.   Law & Analysis

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination and (2) whether the decision comports with relevant legal standards. *Villa*, 895 F.2d at 1021. Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). The

reviewing court may not reweigh the evidence, try the issues *de novo,* or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994).

A finding of no substantial evidence is proper when no credible medical findings or evidence supports the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Fifth Circuit has "noted that the reports of physicians who did not examine the claimant, taken alone, 'would not be substantial evidence on which to base an administrative decision.' " *Strickland v. Harris*, 615 F.2d 1103, 1109 (5th Cir. 1980); *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980). Similarly, an "ALJ may rely on a non-examining physician's assessment only when those findings do not contradict the findings of the examining physician." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991).

In this case, the ALJ found at Step Two of the sequential evaluation process that Alexander had "the following severe impairments: major depressive disorder, anxiety disorder, not otherwise specified; and history of alcohol abuse, in remission." (Tr. 15). At Step Three, however, the ALJ concluded that no combination of the impairments met or medically equaled any of the listed impairments in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 16). The question presented to this court is whether that conclusion is supported in the record by substantial evidence.[1] At Step Four, the ALJ concluded that Alexander was not disabled because she is capable of performing past relevant work. (Tr. 21).

Alexander contends that her impairments meet the listed impairments of 12.04 and 12.06,

---

[1] In reaching the conclusion at Step Four, the ALJ relied on the opinion of a VE, Lenora Maatouk. *Id.* Maatouk's opinion was based on hypotheticals provided by the ALJ, (Tr. 104), which contained the same conclusions that are at issue with regard to Step Three. Consequently, to the extent that the ALJ's conclusions at Step Three are not supported by substantial evidence, neither were the hypotheticals provided to the VE.

4

and that the ALJ's conclusion to the contrary is unsupported by substantial evidence. To meet either listing, "the requirements in both A and B [must be] satisfied, or . . . the requirements in both A and C [must be] satisfied." 20 C.F.R. pt. 404, subpt. P, App. 1 §§ 12.04, 12.06. The ALJ concluded that Alexander's disorders meet the requirements in "A" of both listings, but did not meet the requirements of "B" or "C" in either listing. (Tr. 17). Alexander contends that there is no substantial evidence in the record supporting the ALJ's conclusion that her impairments did not meet the requirements of the "B" components.

The "B" components of the listed impairments of 12.04 and 12.06 are identical, requiring a finding that the infliction met in "A"

> [r]esult[s] in at least two of the following;
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining **social functioning**; or
> 3. Marked difficulties in maintaining concentration, persistence, or **pace**; or
> 4. Repeated episodes of decompensation, each of the extended duration;

20 C.F.R. pt. 404, subpt. P, App. 1 §§ 12.04, 12.06 (emphasis added). The ALJ concluded that Alexander (1) "has a mild degree of limitation in the area of activities of daily living"; (2) "has a **moderate** degree of limitation in social functioning"; (3) "[i]n the area of concentration, persistence, or pace . . . has a **moderate** degree of limitation"; and (4) "has had no episodes of decompensation." (Tr. 17) (emphasis added). Alexander disputes the ALJ's conclusion that she has only moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.

Examination of the record reveals three potential bases for the ALJ's conclusions: (A) Alexander's medical records; (B) Alexander's failure to follow her prescribed treatment regimen; and (C) Alexander's past ability to work despite her condition. None of the three potential bases,

5

however, constitutes substantial evidence supporting the ALJ's conclusions at Step Three.[2]

### A. Medical Records

The administrative record contains fairly extensive documentation of Alexander's medical history. (*E.g.* Tr. 111-12 (Outpatient Record from Louisiana State University Health Science Center); 113-15 (medical report from Doctor Scott Beach); 116-18 (examination report from Doctor Thomas Staats); 119-35 (Mental Residual Functional Capacity Assessment from Doctor William Berzman)). Only one of these records arguably supports the ALJ's conclusion: Doctor William Berzman's Mental Residual Functional Capacity Assessment form (the "MRFCA" form). (Tr. 119-35). Since Berzman did not examine Alexander – his report is based upon review of the other doctors' reports, (Tr. 121) – the MRFCA form constitutes substantial evidence only to the extent that it does not contradict the reports of the examining physicians. *Carrier*, 944 F.2d at 246.

On the MRFCA form, Berzman concluded that Alexander had "mild" restrictions with regard to activities of daily living; "**moderate**" difficulties with regard to maintaining social functioning; "**moderate**" difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 132) (emphasis added). As noted, the "B" components of the listed impairments of 12.04 and 12.06 require "marked" restriction or difficulties. In this context, "marked" is defined as "more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (c).

---

[2] The defendant also points to the fact that Alexander received unemployment benefits during the same period she alleges disability. While this fact may be used – and in fact was used, (Tr. 21) – to attack Alexander's credibility, the undersigned does not consider it to be affirmative evidence supporting the conclusion that her impairments do not meet or equal a listed impairment

Berzman's report, however, does not constitute substantial evidence of the ALJ's conclusion because his report conflicts with the conclusions of an examining physician. Berzman based his conclusions on the reports of Doctor Scott Beach, (Tr. 113-15), and Doctor Thomas Staats, (Tr. 116-18).  (Tr. 121).  Beach, who is not a psychiatrist, examined Alexander in January 2005.  Beach noted that Alexander had "a long history of depression" and that her "depression does not seem to be controlled." (Tr. 115).  Beach noted that Alexander was out of medication and could not afford to obtain more medication.  *Id.*  Beach recommended that Alexander be "evaluated further for her psychiatric illness by a psychiatrist." *Id.*

Alexander was examined by Staats in March 2005.  (Tr. 116-18).  Staats, a clinical neuropsychologist, reached specific conclusions regarding Alexander's impairments and the "B" component of the listings.  Staats concluded that "[a]t the time of the interview, [Alexander's] understanding was intact.  Her memory was intact.  Sustained concentration was marginal.  **Persistence was poor.  Social interaction was poor.**  Adaptation was marginal.  Prognosis is guarded." (Tr. 118) (emphasis added).  Staats further concluded that Alexander was not "appropriately medicated for a significant Anxiety Disorder and would clearly benefit from psychiatric care and therapeutic intervention." *Id.*

Berzman's conclusion that Alexander had "moderate" impairments with regard to social functioning and "moderate" difficulties in maintaining concentration, persistence, or pace, contradicts Staats' conclusion that Alexander's persistence was "poor" and her social interaction was "poor." The adjectives used by Staats (*i.e.*, "poor" and "marginal") are not options on the MRFCA form filled out by Berzman and are not present in the listings.  Consequently, this court considers the plain meaning of the words to determine whether Berzman's report contradicts

Staats' conclusions. The adjective "poor" means, *inter alia*, "wanting in amount or capacity; less than adequate; deficient." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1764 (1993). In contrast, the ALJ defined "moderate" as "[t]here is moderate limitation in this area, but the individual is *still able to function satisfactorily*." (Tr. 18) (emphasis added). Thus, there is an evident contradiction between the words "poor" and "moderate," with the former entailing deficiency and the latter indicating adequacy. Since Berzman's conclusion contradicts that of the examining physician, it does not constitute the substantial evidence required to affirm the ALJ's decision.[3]

### B. Failure to Follow Prescribed Treatment

In his opinion, the ALJ wrote that "[i]f an individual does not follow treatment without a good reason, they will not be found to be disabled." (Tr. 21). This proposition is consistent with caselaw of this circuit stating that "an impairment [that] reasonably can be remedied or

---

[3] Had the ALJ sought clarification from Staats regarding his use of the word "poor," the inquiry would have been fruitful. Staats used the word "poor" to indicate that Alexander has "marked" difficulties; thus, in Staats' opinion Alexander's condition satisfies the "B" component of the listings. *See* Doc. #10-1. The evidence establishing that Staats used the word "poor" to indicate that Alexander has "marked" difficulties was not presented at the administrative level, however, and therefore cannot be considered now. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) (quoting 42 U.S.C. § 405(g)) ("this court may order additional evidence to be taken before the Secretary 'only upon a showing that there is evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.' "); *see also Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987) (holding that the fact that the new evidence – a letter from a doctor – is "of recent origin" does not merit a finding of good cause.); *Geyen v. Sec'y of Health & Human Servs.*, 850 F.2d 263, 264 (5th Cir. 1988) (good cause not established by simply showing that claimant's new counsel, retained after the administrative process, came up with the evidence). While Alexander's failure to show good cause precludes this court from using the evidence to justify remanding, there is no reason that the ALJ should not consider the new evidence on remand. Indeed, the evidence would seem to cast considerable doubt on the ALJ's conclusion that "[n]o ... physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (Tr. 21).

controlled by medication or therapy . . . cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (citing §§ 404. 1530 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."), 416.930 (same)).

In this case, there is evidence that Alexander has failed to take the medications prescribed for her and that this failure is exacerbating her condition. (Tr. 113 (Alexander "is currently out of her meds"); Tr. 118 (Alexander "does not appear to be appropriately medicated . . . and would clearly benefit from psychiatric care and therapeutic intervention.")). While, the ALJ noted that he believed Alexander's condition would improve with medication, he did not state that this fact provided the basis for his conclusion that Alexander's condition did not meet a listing.

Other courts that have dealt with similar ALJ opinions "have inferred from the ALJ's reasoning that the ALJ based a finding of disability on the lack of compliance." *Grubb v. Apfel*, No. 98-9032, 2003 WL 23009266, at *5 (S.D.N.Y. Dec. 22, 2003). In such cases, the courts have enforced the procedural mandates of the social security rulings and regulations that apply to an ALJ's denial of benefits because of noncompliance. *Id.* In this case, the ALJ failed to comply with two of the mandates and, as a result, the denial of benefits cannot be upheld on the grounds of Alexander's noncompliance.

First, ALJs may not deny benefits for noncompliance unless they provide notice to the claimant. *Tristan v. Barnhart*, No. SA-05-CA-1223-OG, 2007 WL 496853, at *14 (W.D.Tex. Feb. 2, 2007); *Alcorta v. Barnhart*, No. SA-02-CA-0472, 2006 WL 3827003, at *11 (W.D.Tex. Dec. 28, 2006). Social Security Ruling 82-59 provides that "before [such] a determination is made, *the individual . . . will be informed of this fact and* of its effect on eligibility for benefits."

SSR No. 82-59 (1982) (emphasis added). Second, the claimant "will be *afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so*." *Id.* (emphasis added); *see also* 20 C.F.R. § 416.930 ("If you do not follow the prescribed treatment *without a good reason*, we will not find you disabled . . .") (emphasis added). Here, there is no indication that notice was given. Neither is there any indication that the ALJ attempted to determine whether Alexander "is justifiably failing to undergo the treatment prescribed." Consequently, to the extent that the ALJ relied upon Alexander's noncompliance with "prescribed medical treatment to determine that [she] was not disabled and to determine residual functional capacity, the ALJ committed error." *Alcorta*, 2006 WL 3827003, at *11; *see also Pimenta v. Barnhart*, No. 05-5698, 2006 WL 2356145, at *6 (S.D.N.Y. Aug. 14, 2006) ("To the extent that the ALJ relied on [claimant's] refusal to have surgery without determining whether his refusal was justifiable, the decision was in error.").[4]

The record in this case plainly reveals two potential justifications for Alexander's

---

[4] Generally, courts "will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant can show that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.' " *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). The courts that have considered an ALJ's failure to follow the procedure set forth by SSR 82-59, however, have reversed and remanded without undertaking this prejudice analysis. *Id.*; *Alcorta*, 2006 WL 3827003, at *11; *Pimenta*, 2006 WL 2356145, at *6; see also *Grubb*, 2003 WL 23009266, at *5 (remanding, in part, due to the ALJ's noncompliance with SSR 82-59, and stating that "[a]s other court have noted . . . 'the regulatory scheme promulgated by the Secretary does not expressly dictate how the noncompliance inquiry . . . meshes with the [five-step] sequential analysis of disability.").
   Furthermore, this court is not reversing for failure to develop the record. Instead, the court is noting that this unraised argument – that Alexander's failure to follow her prescribed treatment justifies the ALJ's conclusion – does not warrant affirmation of the ALJ's opinion. Moreover, as discussed *infra*, there may be evidence in the record that indicates Alexander could establish prejudice if so required.

apparent noncompliance.  First, "federal courts have recognized that a mentally ill person's noncompliance with psychiatric medications could be the 'result of [the] mental impairment and, therefore, [the noncompliance is] neither willful nor without a justifiable excuse.' " *Grossweiler v. Barnhart*, No. SA-02-CA-903-RF, 2003 WL 22454928, at *2 (W.D.Tex. Sept. 30, 2003).  Second, "[i]f . . . the claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).  In his January 2005 report, Beach indicated that Alexander was out of her medication and was unable to afford them.  (Tr. 115).  While there is an indication in the record that Alexander was at one point referred for assistance in obtaining her medications, (Tr. 21), this issue was not further developed.  *See* (Tr. 154-163 (claimant's testimony at the administrative hearing in which the ALJ did not inquire as to whether she was taking her medications or, if not, why she was not taking them).  Since the ALJ in this case neither provided notice to Alexander nor afforded Alexander an opportunity for explanation, the ALJ erred to the extent that it denied Alexander's request for benefits based on her alleged noncompliance.  The fact that Alexander may have failed to comply with her prescribed treatment does not constitute substantial evidence supporting the ALJ's conclusion at Step Three.

      **C.**    **Ability to Perform Relevant Work in Past**

Finally, the court considers whether the fact that Alexander has been able to secure employment in the past despite her condition constitutes substantial evidence supporting the ALJ's decision.  (Tr. 20).  The ALJ wrote that "[a] condition that has existed for a long period of time, that did not prevent work in the past will not prevent work at the present or in the future without a dramatic worsening of the impairment."  (Tr. 20) (citing *Fraga v. Brown*, 810 F.2d

1296, 1305 n.11 (5th Cir. 1987)).  The ALJ noted that "[d]espite her history of prior hospitalization for depression, [Alexander] was able to overcome her problems and demonstrate reliability in the workplace for many years." *Id.*

Although Alexander's past work history may be relevant under Step Four or Step Five of the sequential evaluation process, no court in this circuit has used the claimant's employment history to uphold a conclusion at Step Three.  *E.g. Bowie v. Astrue*, No. 07-50567, 2008 WL 238948, at *2 (5th Cir. Jan. 29, 2008) (applying the principle at Step Four); *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (applying the principle at Step Five); *Johnson v. Bowen*, 864 F.2d at 347 (applying the principle at Step Four after not mentioning it during Step Three analysis).  Use of the principle at Step Four or Step Five, but not at Step Three, is consistent with the regulations.  *See* 20 C.F.R. § 404.1525(a) ("We emphasize that the Listing of Impairments describes impairments that the Commissioner considers to be severe enough to prevent an individual from performing any gainful activity, **regardless of** his age, education or **work experience**.") (emphasis added).  As a result, Alexander's ability to work in the past despite her condition does not constitute substantial evidence supporting the ALJ's conclusion at Step Three.

## IV.   Conclusion

Having thoroughly reviewed the ALJ's opinion and the administrative record, the undersigned concludes that the record does not contain substantial evidence supporting the ALJ's conclusion at Step Three of the sequential evaluation process.  As a result, the matter is remanded so that the ALJ may reconsider Staats' conclusions and, if necessary, so Alexander may have the opportunity to provide a justification for not following her prescribed treatment.

For the foregoing reasons,

The **Commissioner's decision is HEREBY REVERSED and REMANDED for further proceedings**.

THUS DONE AND SIGNED, in Monroe, Louisiana, on the 31st day of March, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE